UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard J. DEUTSCH and Bert Williams,
Defendants-Appellants.

No. 17719.

United States Court of Appeals,
Seventh Circuit.

Jan. 13, 1971.

Rehearing Denied March 23, 1971.

Barry J. Freeman, Chicago, Ill., for defendants-appellants.

William J. Bauer, U. S. Atty., Anton Valukas, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Michael D. Marrs, Asst. U. S. Attys., of counsel.

Before KILEY, PELL and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

Appellants were convicted of conspiring with an officer of the National Bank of Hyde Park to misapply bank funds and credits in violation of 18 U.S.C. § 656. The indictment, returned on July 25, 1968, charged that overt acts pursuant to the conspiracy had been committed on July 30, 1963, forestalling the bar of limitations by five days. 18 U.S. C. § 3282.

Appellants contend that the July 30, 1963, transaction was not in furtherance of the conspiracy and hence the statute had run; alternatively, that the unexplained delay in returning the indictment prejudiced their defense and requires that the conviction be set aside. There is no merit to either contention.

■ The conspiracy was effectuated by a series of loans made for the benefit of appellants on the basis of fraudulent applications.[1] One Spellman, an employee of appellant Williams, was a par-

---

1. In July, 1961, the bank made a loan of $60,000 to an entity owned by appellants, and provided them with collateral for a loan for $27,000 from one Eager. The proceeds of a series of installment loans made thereafter to fictitious or misdescribed payees, pursuant to applications which misstated the purposes of the loans, were primarily applied against the July, 1961, indebtedness, as well as against another $27,000 loan made by Eager in July, 1962, and later delinquencies in the installment loans.

ticipant in five [2] of these loan transactions as either a payee or an endorser of the proceeds check, or as the maker of a subsequent check transferring the proceeds (less $100 for the apparent purpose of compensating him for his furtherance of the enterprise) to the bank officer who in turn usually, though not always, then reduced appellants' pre-existing indebtedness. The evidence clearly brands Spellman as a co-conspirator. When he borrowed $2,350 pursuant to a fictitious auto loan application, and, on July 30, 1963, delivered his personal check for $2,250 to the bank officer who had previously been covering appellants' delinquencies, he acted in furtherance of the conspiracy. At least it certainly was not error for the learned trial judge, who heard the case without a jury, so to interpret the evidence. *Cf.*, Blumenthal v. United States, 332 U.S. 539, 556–558, 68 S.Ct. 248, 92 L.Ed. 154.

Appellants' alternative argument is no stronger. The evidence of guilt, including voluminous documents and uncontradicted oral testimony by the participating bank officer, was overwhelming. The principal claim of prejudice resulting from the delay in prosecution stems from purported difficulty in reconstructing the details of the July 30, 1963, events which forestalled the bar of limitations. But if the indictment had been returned a few weeks earlier, there would have been no need for the Government to prove the July transaction because the events of May and June, 1963, would then have been within the five-year period.[3] The only consequence of the Government's delay was to provide appellants with a colorable defense of limitations that would not otherwise have been available to them.

As we are not persuaded that appellants were prejudiced, the Government had no duty to explain the delay in returning the indictment. United States

v. Haggerty, 419 F.2d 1003, 1007 (7th Cir. 1969), cert. denied 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686; United States v. Lee, 413 F.2d 910, 913 (7th Cir. 1969), cert. denied 396 U.S. 1022, 90 S.Ct. 595, 24 L.Ed.2d 515.

The judgment is affirmed.

---

2. Appellants appear to contend that one of these five loans was legitimate because 20% of the proceeds ($500) was actually used for the purpose stated in the loan application.

3. We find no merit in appellant's subsidiary argument that none of the loans subsequent to July, 1962, was within the scope of the conspiratorial agreement.